# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Appleseed's Intermediate Holdings, LLC, *et al.*, | |
| Debtors. | Case No. 11-10160 (KG) |
| Robert N. Michaelson, as Trustee of the Appleseed's Litigation Trust, | |
| Plaintiff, | |
| v. | Civil Action No. 11-807 (JEI/KM) |
| Golden Gate Private Equity, Inc., a Delaware Corporation, *et al.*, | |
| Defendants. | |
| Golden Gate Private Equity, Inc., *et al.*, | |
| Counterclaim Plaintiffs, | |
| v. | Civil Action No. 11-807 (JEI/KM) |
| Robert N. Michaelson, as Trustee of the Appleseed's Litigation Trust, | |
| Counterclaim Defendant. | |
| Jeffrey D. Farmer, Bradford J. Farmer, Brent A. Bostwick and Vito Kowalchuk, | |
| Cross Claim Plaintiffs, | |
| v. | Civil Action No. 11-807 (JEI/KM) |

136419.00601/22134610v.1

| | |
|---|---|
| Golden Gate Private Equity, Inc., *et al.*,<br><br>                         Cross Claim Defendants. | )<br>)<br>)<br>)<br>) |

| | | |
|---|---|---|
| Jeffrey D. Farmer, Bradford J. Farmer, Brent A.<br>Bostwick and Vito Kowalchuk,<br><br>                    Third Party Plaintiffs,<br><br>                   v.<br><br>T. Neale Attenborough, Brenda Koskinen,<br>Claire Spofford, John Civali, Dave Walde,<br>American Capital Strategies, Ltd. and<br>Doe Defendants 1-15,<br><br>                    Third Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 11-807 (JEI/KM) |

## CROSS CLAIMS AND THIRD PARTY COMPLAINT OF FBK DEFENDANTS

Pursuant to Rule 13 and 14 of the Federal Rules of Civil Procedure, Defendants, Jeffrey D. Farmer, Bradford J. Farmer, Brent A. Bostwick and Vito Kowalchuk (also referred to collectively as the "FBK Defendants", the "Cross Claim Plaintiffs" or the "Third Party Plaintiffs") bring the following cross claims and third party complaint:

### Parties

**Cross Claim Plaintiffs and Third Party Plaintiffs**

1.     Cross claimant and Third Party Plaintiff Jeffrey D. Farmer was a shareholder of Appleseed's TopCo Inc., subsequently known as Orchard Brands Corporation ("Orchard Brands").

2.     Cross claimant and Third Party Plaintiff Bradford J. Farmer was a shareholder of Appleseed's TopCo, Inc., subsequently known as Orchard Brands.

3.      Cross claimant and Third Party Plaintiff Brent A. Bostwick was a shareholder of Appleseed's TopCo, Inc., subsequently known as Orchard Brands.

4.      Cross claimant and Third Party Plaintiff Vito Kowalchuk was a shareholder of Appleseed's TopCo, Inc., subsequently known as Orchard Brands.

**Cross Claim Defendants**

5.      Cross claim Defendant Golden Gate Private Equity, Inc. ("Golden Gate") is a Delaware corporation.

6.      Cross claim Defendant Golden Gate Capital Management II., L.L.C. ("GGC Management II") is a Delaware limited liability company.

7.      Cross claim Defendant GGC Administration, L.L.C. ("GGCA") is a Delaware limited liability company.

8.      Cross claim Defendant Orchard Brands Corporation ("Orchard Brands") f/k/a Appleseed's Topco, Inc. n/k/a OBC Intermediate LLC ("Appleseed's TopCo") is a Delaware limited liability company.

9.      Cross claim Defendant Orchard Brands Topco LLC n/k/a OBC Topco LLC ("Orchard Topco") is a Delaware limited liability company.

10.     Cross claim Defendant Catalog Holdings, LLC, and Series thereof, including, without limitation, Catalog Holdings LLC – Series B (Draper's), Catalog Holdings LLC – Series C (Appleseed's), Catalog Holdings LLC – Series D (NTO) and Catalog Holdings LLC – Series E (Haband), is a Delaware limited liability company.

11.     Cross claim Defendant Golden Gate Capital Investment Fund II, L.P. is a Delaware limited partnership.

136419.00601/22134610v.1

12.     Cross claim Defendant Golden Gate Capital Investment Fund II (AI), L.P. is a Delaware limited partnership.

13.     Cross claim Defendant Golden Gate Capital Associates II-QP, L.L.C. is a Delaware limited liability company.

14.     Cross claim Defendant Golden Gate Capital Associates II-AI, L.L.C. is a Delaware limited liability company.

15.     Cross claim Defendant CCG AV, L.L.C., and all Series thereof, including, but not limited to,  CCG AV, L.L.C. – Series C (GGC Co-Invest), CCG AV, L.L.C. – Series I (Bain), CCG AV, L.L.C. – Series K (K&E) and CCG AV, L.L.C. – Series K, is a Delaware limited liability company.

16.     Cross claim Defendant Webster Capital Founders' Fund, L.P. ("Founders' Fund") is a Delaware limited partnership and investment fund.

17.     Cross claim Defendant Webster II, L.L.C. ("Webster II") is a Delaware limited liability company and investment fund.

18.     Cross claim Defendant Webster III, L.L.C. ("Webster III") is a Delaware limited liability company and investment fund.

19.     Cross claim Defendant Stefan Kaluzny was, at various times relevant to the allegations herein, a director or officer of the following above-referenced Debtors: Appleseed's Intermediate Holdings, LLC; Appleseed's Acquisition, Inc.; Appleseed's Holdings, Inc.; Draper's & Damon's Acquisition LLC; Draper's & Damon's LLC; Haband Acquisition LLC; Johnny Appleseed's, Inc.; Norm Thompson Outfitters, Inc.; and NTO Acquisition Corporation.

20.     Cross claim Defendant Joshua Olshansky was, at various times relevant to the allegations herein, a director or officer of the following above-referenced Debtors: Appleseed's

4

Intermediate Holdings, LLC; Appleseed's Acquisition, Inc.; Appleseed's Holdings, Inc.; Draper's & Damon's Acquisition LLC; Gold Violin LLC; Haband Acquisition LLC; Haband Company LLC; Johnny Appleseed's, Inc.; Norm Thompson Outfitters, Inc.; and NTO Acquisition Corporation.

**Third Party Defendants**

21.    Third party Defendant T. Neale Attenborough ("Attenborough"), at all relevant times, served as the Chairman and Chief Executive Officer of Orchard Brands and Chief Executive Officer of Debtor, Appleseed's Intermediate Holdings LLC. Third Party Plaintiffs are informed that Attenborough was one of the primary individuals involved in planning and executing the 2007 Transaction (as defined in the Complaint), including the so-called "Dividend Recap" from which he profited handsomely. Attenborough received at least $12,446,936.28 from the Dividend Recap, which Plaintiff, Robert N. Michaelson, as Trustee of the Appleseed's Litigation Trust ("Trustee" or "Plaintiff") is not seeking to recover in this action. Rather, Attenborough, along with certain of his fellow insiders at the Debtors, after presiding over the Debtors' slide into bankruptcy, obtained a personal release for himself under the Debtors' reorganization Plan.[1]   In addition, after being released by the Debtors and retaining his $12 million payout free of challenge by the Trustee, Attenborough next obtained employment with Golden Gate, for which he now works as an "Operating Partner." *See* Plan at Art. VIII. ¶¶ D, E and www.goldengatecap.com.  Attenborough has a last known business address at the offices of Orchard Brands, 30 Tozer Road, Beverly, MA 01915.

---

[1] Joint Plan of Reorganization of Appleseed's Intermediate Holdings LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, confirmed by order of the bankruptcy court of April 14, 2011. *See* Bankruptcy Case Docket No. 638 (the "Plan"). Unless otherwise indicated, capitalized terms herein, shall have the meaning given to them in Plaintiff's Complaint.

22.     Third party Defendant Brenda Koskinen ("Koskinen") was at all relevant times, a senior advisor or other official of Orchard Brands, Draper's and Damon's Inc. and possibly other entities affiliated with the Debtors.  Third Party Plaintiffs are informed that, similar to Attenborough, Koskinen was personally involved in planning and executing the 2007 Transaction, including the so-called "Dividend Recap" transaction from which she, like Attenborough, profited handsomely.  Koskinen received at least $32,118,052.58 from the Dividend Recap, dwarfing even Attenborough's large payout, which the Trustee also is not seeking to recover in this action.  Rather, Koskinen, along with certain of her fellow insiders of the Debtors including Attenborough, after presiding over the Debtors' slide into bankruptcy, also received a release from the Debtors under the Plan.  The Third Party Plaintiffs believe that Koskinen remains affiliated with the post-reorganization Debtors in some capacity.  *See* Plan at Art. VIII. D.  Koskinen has a last known business address at the offices of Orchard Brands, 30 Tozer Road, Beverly, MA 01915.

23.     Third party Defendant Claire Spofford ("Spofford") was at all relevant times, the President of Appleseed's Holdings, Inc. and an officer of Appleseed's Holdings, Inc. and possibly other entities affiliated with the Debtors.  Third Party Plaintiffs are informed that, similar to Attenborough and Koskinen, Spofford was personally involved in planning and executing certain aspects of the 2007 Transaction, including the so-called "Dividend Recap" transaction from which she, like Attenborough and Koskinen, profited handsomely.  Spofford received at least $1,213,101.06 from the Dividend Recap, which the Trustee is not seeking to recover in this action.  Rather, Spofford, along with certain of her fellow insiders of the Debtors including Attenborough and Koskinen, after presiding over the Debtors' slide into bankruptcy, also received a release from the Debtors under the Plan.  *See* Plan at Art. VIII. D.  Spofford has

a last known business address at the offices of Orchard Brands, 30 Tozer Road, Beverly, MA 01915.

24.     Third party Defendant John Civali ("Civali") was at all relevant times, the President of Shared Services of Orchards Brands, the Senior Vice President Operations of Appleseed's Holdings, Inc. and possibly an officer of other entities affiliated with the Debtors. Third Party Plaintiffs are informed that, similar to Attenborough, Koskinen and Spofford, Civali was personally involved in planning and executing certain aspects of the 2007 Transaction, including the so-called "Dividend Recap" transaction from which he, like Attenborough, Koskinen and Spofford, profited handsomely. Civali received at least $1,067,108.27 from the Dividend Recap, which the Trustee is not seeking to recover in this action. Rather, Civali, along with certain of his fellow insiders of the Debtors including Attenborough, Koskinen and Spofford, after presiding over the Debtors' slide into bankruptcy, also received a release from the Debtors under the Plan. *See* Plan at Art. VIII. D. Civali has a last known business address at the offices of Trilogy Fulfillment, 6600 Alum Creek Drive, Groveport, OH 43125.

25.     Third party Defendant Dave Walde ("Walde") was at all relevant times, the Chief Financial Officer of Orchards Brands and possibly an officer of other entities affiliated with the Debtors. Third Party Plaintiffs are informed that, similar to Attenborough, Koskinen, Spofford and Civali, Walde was personally involved in planning and executing certain aspects of the 2007 Transaction, including the so-called "Dividend Recap" transaction from which he, like Attenborough, Koskinen, Spofford and Civali, profited handsomely. Walde received at least $1,213,101.06 from the Dividend Recap, which the Trustee is not seeking to recover in this action. Rather, Walde, along with certain of his fellow insiders of the Debtors including Attenborough, Koskinen, Spofford and Civali, after presiding over the Debtors' slide into

bankruptcy, also received a release from the Debtors under the Plan. *See* Plan at Art. VIII. D. Walde has a last known business address at the offices of Orchard Brands, 30 Tozer Road, Beverly, MA 01915.

26.     Third party Defendant American Capital Strategies, Ltd. ("ACAS"), at all relevant times, was a Delaware corporation named as a "Released Party" under the Plan, along with Attenborough, Koskinen, Spofford, Civali, Walde and others. *See* Plan at Art. I ¶ A. 161, Art. VIII. ¶ D.  ACAS is described in the Complaint as one of the Senior Lenders that funded the 2007 Transaction, including the Dividend Recap.  Third Party Plaintiffs are informed that, similar to Attenborough, Koskinen, Spofford, Civali and Walde, ACAS was directly involved in planning and executing the 2007 Transaction, including the so-called "Dividend Recap" transaction from which ACAS, like Attenborough, Koskinen, Spofford, Civali and Walde, profited handsomely.  ACAS received at least $4,661,817.76 from the Dividend Recap.  On information and belief, an affiliate of ACAS, American Capital Equity I, LLC ("ACE"), also received $1,997,921.89 from the Dividend Recap.  The Trustee is not seeking to recover either of these payments to ACAS or ACE in this action.  Rather, ACAS and ACE, along with certain insiders of the Debtors mentioned above, including Attenborough, Koskinen, Spofford, Civali and Walde, received releases from the Debtors under the Plan.  The FBK Defendants specifically reserve the right to add ACE as a Third Party Defendant to this action when more information about its role in the matters at issue becomes known. *See* Plan at Art. VIII. D. ACAS has an address at 2 Bethesda Metro Center, 14th Floor, Bethesda, MD 20814.

27.     The FBK Defendants do not know the names and capacities of the Third Party Defendants sued herein as Doe Defendants 1-15, which include, without limitation, any and all affiliates of any of the named Cross Claim Defendants or Third Party Defendants and/or any

other party that participated in or was involved in the planning or execution of the 2007 Transaction and Dividend Recap at issue in the Trustee's Complaint (collectively, the "Doe Defendants"). Therefore, the Cross Claim Plaintiffs and Third Party Plaintiffs sue all such Third Party Defendants as Doe Defendants. Each of the Doe Defendants is responsible in some manner for the matters at issue in the Trustee's Complaint.

28.    The FBK Defendants will amend this Third Party Complaint to allege the true names and capacities of the Doe Defendants when they are ascertained.

29.    As provided in the Plan, the FBK Defendants hereby provide notice of the Bar Date Order in Article VIII. ¶ K. of the Plan.

## Jurisdiction and Venue

30.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 because these cross claims and third party claims arise out of the same set of transactions or occurrences that are the subject of the Complaint. The Court also has supplemental jurisdiction over the FBK Defendants' cross claims and third party claims pursuant to 28 U.S.C. § 1367(a) because such claims are so related to the claims asserted in this action that are within the Court's original jurisdiction, that they form part of the same case or controversy.

31.    Venue in this Court is appropriate under 28 U.S.C. §1409.

## Facts

32.    The Complaint alleges that the Debtors were a leading, multi-channel marketer of apparel and home products focused on the market for individuals over fifty-five (55). As of the date of the filing of the Debtor's Chapter 11 petition on January 19, 2011 (the "Petition Date"), the Debtors offered products through a portfolio of 17 brands and managed their businesses from Beverly, Massachusetts. *See* Complaint at ¶ 48.

9

33.     In 2005, investment funds and holding companies managed by Golden Gate acquired Appleseed's Intermediate.  As of the Petition Date, investment funds managed by the Golden Gate Defendants indirectly owned approximately 68.4% of the outstanding and issued equity interests of Orchard TopCo based upon their holdings in Catalog Holdings.  *See* Complaint at ¶ 49.

34.     The allegations of the Complaint most relevant to the FBK Defendants are those relating to the alleged 2007 Transaction.  The Complaint alleges that on January 23, 2007, BLR Acquisition Corp. ("BLR Acquisition") (an entity formed by Golden Gate) and non-Debtor, Appleseed's TopCo, Inc. (now known and referred to herein as Orchard Brands) entered into an Agreement and Plan of Merger ("Merger Agreement") with Blair Corporation ("Blair"), which called for Blair and BLR Acquisition to merge, Blair to be the surviving corporation, and Blair to then be owned, directly or indirectly, by Appleseed's TopCo (the "Blair Acquisition").  The Merger Agreement provided for Blair's shareholders to be paid $42.50 per share for their Blair stock, which was then publicly traded, for a total merger price of approximately $158 million.  The Complaint describes the Blair Acquisition as a leveraged buyout ("LBO").  *See* Complaint at ¶¶ 50.

35.     The Complaint alleges that in connection with the Blair Acquisition, the PE (i.e., private equity) Parties [2] also engaged in the so-called Dividend Recap transaction, which it describes as a transaction in which a company is recapitalized through borrowing, with part of the borrowed funds used to pay a dividend to the private equity sponsors and their investment funds.  *See* Complaint at ¶ 53.

---

[2] "PE Parties" is defined in the Complaint collectively as the PE Sponsors, the PE Owners and the PE Funds.  *See* Complaint at ¶¶ 13, 17, 26 and 27.

36.     According to the Complaint, to finance the Blair Acquisition and the "dividend recap", the PE Parties engaged ACAS and UBS Securities LLC ("UBS"), as Joint Lead Arrangers, to arrange and syndicate $710 million of senior credit facilities (the "Senior Credit Facilities") and planned to use the assets of the Debtors and Blair as collateral making these secured debts senior in priority to fund the Dividend Recap for the benefit of the PE Parties. *See* Complaint at ¶ 54.

37.     The Complaint further alleges that, near the time of the closing of the Blair Acquisition and the Senior Credit Facilities, a Joint Special Telephonic Meeting ("Joint Special Telephonic Meeting") of the Boards of Directors of Appleseed's TopCo, Appleseed's Intermediate and Debtor, Haband Company, Inc. ("Haband") took place. And, on April 26, 2007, the day before that meeting, two directors of Haband, James McClane and Anthony Del Caudio, were replaced by two new directors, Olshansky and Attenborough, who had financial interests in payment of the Haband Dividend (defined below). *See* Complaint at ¶¶ 57-58.

38.     The Complaint states that Attenborough chaired the Joint Special Telephonic meeting, reporting that the purpose of the meeting was to consider and approve (i) the declaration and payment of a dividend by Haband ("Haband Dividend") in an amount not to exceed $320,000,000 to Appleseed's Intermediate; (ii) the declaration and payment of a dividend by Appleseed's Intermediate ("Appleseed's Intermediate Dividend") in an amount not to exceed $320,000,000, to non-Debtor, Appleseed's TopCo; and, (iii) the declaration and payment of a dividend by non-Debtor, Appleseed's TopCo in an amount not to exceed $320,000,000, to the shareholders of non-Debtor, Appleseed's TopCo, specifically, the holders of record of outstanding Class L Common Stock, Class A Common Stock, and Class B Common Stock, in accordance with the priorities and preferences set forth in Appleseed's

11

TopCo's certificate of incorporation ("Appleseed's TopCo Dividend")". These dividends (collectively the "Dividends") were allegedly funded by proceeds from the Senior Credit Facilities arranged and funded through/by Third Party Defendants, ACAS, UBS and others. The Complaint refers to the Blair Acquisition, the borrowings under the Senior Credit Facilities, the payment of the Dividends "and all related transactions, transfers, and payments" collectively as the "2007 Transaction" and alleges that "at all relevant times during the negotiation and consummation of the 2007 Transaction , the PE Parties exercised dominion and control over the Debtors and their affairs". *See* Complaint at ¶¶ 59-63.

39.     The Complaint further alleges that the Blair Acquisition was completed on April 30, 2007, resulting in Appleseed's Intermediate becoming the owner of Blair (now known as Blair LLC). *See* Complaint at ¶ 66.

40.     As the Complaint describes it, the Senior Credit Facilities involved three secured loans, which were each arranged and then syndicated by ACAS and UBS. They included a $125 million asset based line, a $335 million "first lien" loan and a $250 million "second lien" loan. At the closing of the 2007 Transaction on April 30, 2007, the Secured Lenders (defined below) funded $607,500,000 in secured loans. The ABL Lenders (defined below) made an initial advance of $22,500,000, the First Lien Lenders (defined below) advanced $335,000,000, and the Second Lien Lenders (defined below) advanced $250,000,000. At the closing, the PE Parties also allegedly had access to approximately $37 million of balance sheet cash at Blair and $6 million of balance sheet cash at Appleseed's Intermediate, making a combined total of approximately $650 million available for use by the PE Parties at the April 30, 2007 closing. *See* Complaint at ¶¶ 70-71.

41.    The Complaint alleges that from the $650 million in Senior Credit Facilities loan proceeds and balance sheet cash, the payments were made at the direction of the PE Parties, the Directors and other unnamed "Doe Defendants", for their benefit and for the benefit of the Minority Shareholders totaling approximately the amount of the Senior Credit Facilities. *See* Complaint at ¶ 72.

42.    Attached to the Trustee's Complaint as "Exhibit A" is a copy of an alleged "Closing Sources & Uses document" that allegedly details the payments, including specific transfers, made in connection with the April 30, 2007 closing, through which the PE Parties and other of the defendants and professionals allegedly received approximately $320 million.  On or about May 10, 2007, Appleseed's TopCo allegedly used the $310 million in Dividends received to make distributions to its shareholders.  Attached to the Complaint as Exhibit B is a copy of the May 10, 2007, Dividend Analysis, that the Plaintiff alleges provides information on the specific recipients and amounts of transfers made out of the Dividends, including payments to Attenborough, Koskinen and others.  Exhibit B shows that a significant portion of the alleged May 10, 2007 Dividends constituted payments on return of capital to the recipients. *See* Complaint at ¶¶ 73-77, Exhibits A and B.

43.    The Trustee further alleges in his Complaint that before the 2007 Transaction, the PE Parties used their "domination and control over the Debtors to cause the Debtors to enter into four advisory agreements by and among specific Debtors, Appleseed's TopCo, and GGCA beginning in November 2005" and that in conjunction with the Blair Acquisition, the PE Parties again used their "domination and control" over the Debtors to require the Debtors to execute an amended and restated advisory agreement (the "Advisory Agreement") among eleven of the Debtors and that the Debtors paid various "Advisory Fees", expenses reimbursements and

13

"Transaction Fees" to GGCA and Golden Gate totaling approximately $17,850,000. *See* Complaint at ¶¶ 79, 87.

44.     The Debtors became obligated under the $125 million credit agreement (as amended, the "ABL Credit Agreement"), dated as of April 30, 2007, among ACAS and UBS, as joint lead arrangers and joint bookrunners, American Capital Financial Services, Inc. as syndication agent, UBS Loan Finance LLC, as swingline lender and UBS AG, Stamford Branch, as issuing bank, administrative agent and co-collateral agent (the "ABL Administrative Agent") and Wells Fargo Retail Finance, LLC as co-collateral agents and the lenders party thereto from time to time (the "ABL Lenders").  Under a security agreement dated April 30, 2007 (the "ABL Security Agreement"), the obligations under the ABL Credit Agreement were secured by each of the Debtors' assets (the "ABL Collateral").  The parties entered into an amendment to the ABL Credit Agreement on July 12, 2007. *See* Complaint at ¶ 90.

45.     The Complaint further alleges that, at the direction of the PE Parties, each of the Debtors also became obligated under the $335 million term loan credit agreement (as amended, the "First Lien Credit Agreement"), dated as of April 30, 2007, among ACAS and UBS as joint lead arrangers and joint bookmanagers, UBS as syndication agent, Wilmington Trust FSB as successor to American Capital Financial Services, Inc., as administrative agent (the "First Lien Administrative Agent") and the lenders party thereto from time to time (the "First Lien Lenders").  Pursuant to a security agreement dated April 30, 2007 (the "First Lien Security Agreement"), the obligations under the First Lien Credit Agreement were secured by each of the Debtors' assets (collectively, the "First Lien Collateral").  Additionally, the Intercreditor Agreement (defined below) provided that the lien granted to the First Lien Administrative Agent and the First Lien Lenders with respect to the Debtors' equipment, mortgaged premises,

14

fixtures, intellectual property collateral and capital stock collateral (the "Term Loan Priority Collateral"), were senior to any liens on the Term Loan Priority Collateral securing the ABL Lenders and Second Lien Purchasers. The parties entered into an amendment to the First Lien Credit Agreement on July 12, 2007. *See* Complaint at ¶¶ 95-96.

46. The Complaint alleges further that at the direction of the PE Parties, each of the Debtors also became obligated under the $250 million note purchase agreement (as amended, the "Second Lien Purchase Agreement" and, together with the ABL Credit Agreement and the First Lien Credit Agreement, the "Secured Credit Agreements"), dated April 30, 2007, among ACAS, as sole lead arranger and bookmanager, American Capital, Ltd. (successor by merger to American Capital Financial Services, Inc.), as documentation agent and administrative agent (the "Second Lien Administrative Agent," and together with the ABL Administrative Agent and the First Lien Administrative Agent, the "Administrative Agents") and purchasers party thereto from time to time (the "Second Lien Purchasers" and, together with the ABL Lenders and the First Lien Lenders, the "Secured Lenders") and that pursuant to a security agreement dated April 30, 2007 (the "Second Lien Security Agreement"), the obligations under the Second Lien Purchase Agreement were secured by each of the Debtors' assets (collectively, the "Second Lien Collateral"). The parties entered into an amendment to the Second Lien Purchase Agreement on July 12, 2007, reducing the maximum principal amount from $250 million to $200 million, and the $50 million balance was paid in connection with funding under the Appleseed's Intermediate Note Purchase Agreement (defined below). Approximately $289.3 million was outstanding under the Second Lien Purchase Agreement as of December 25, 2010. *See* Complaint at ¶¶ 101-103.

136419.00601/22134610v.1

47.     The Administrative Agents were party to an intercreditor agreement dated April

30, 2007 (as amended, the "Intercreditor Agreement"). Among other things, the Intercreditor

Agreement set forth the relative priority of the Secured Lenders' respective security interests in

each of the ABL Collateral, the First Lien Collateral and the Second Lien Collateral. *See*

Complaint at ¶ 106.

48.     The Complaint further alleges that at the direction of the PE Parties, on July 12,

2007, Appleseed's Intermediate, as issuer, entered into a $50 million unsecured note purchase

agreement with American Capital, Ltd. (successor by merger to American Capital Financial

Services, Inc.), as administrative agent and ACAS, as sole lead arranger and bookrunner (the

"Appleseed's Intermediate Note Purchase Agreement"), and the purchasers party thereto from

time to time (the "Appleseed's Intermediate Note Purchasers"). Approximately $73.3 million

was outstanding under the Appleseed's Intermediate Note Purchase Agreement as of December

25, 2010. The obligations under the Appleseed's Intermediate Note Purchase Agreement were

unsecured. Only Appleseed's Intermediate was obligated under the Appleseed's Intermediate

Note Purchase Agreement. Pursuant to a subordination agreement (the "Subordination

Agreement") dated July 12, 2007, the obligations under the Appleseed's Intermediate Note

Purchase Agreement were subordinate to the obligations under the ABL Credit Agreement, the

First Lien Credit Agreement and the Second Lien Purchase Agreement. *See* Complaint at ¶¶

107-111.

49.     The Complaint alleges that as of December 25, 2010, the Debtors had outstanding

secured and unsecured indebtedness totaling approximately $725.1 million. These obligations

included: (a) $38.4 million outstanding under the ABL Credit Agreement; (b) $324.1 million

outstanding under the First Lien Credit Agreement; (c) $289.3 outstanding under the Second

16

Lien Purchase Agreement; and (d) with respect to Appleseed's Intermediate only, $73.3 outstanding under the Appleseed's Intermediate Note Purchase Agreement (collectively the "Prepetition Indebtedness"), and the Debtors were unable to generate enough cash to make the interest and other payments due under the Prepetition Indebtedness. *See* Complaint at ¶¶ 111-112.

50.     The Complaint contains allegations stating that financial projections and reviews performed by Golden Gate before the BLR Acquisition showed that the Debtors allegedly could not afford the 2007 Transaction and that Golden Gate's internal analysis showed that the combined, post-merger Debtors could support only approximately $300 million in new debt, would require a $30 million further equity investment by the PE Parties, and would result in only an $82.5 million dividend, effectively just $52.5 million net of the new equity investment. The Complaint alleges that in seeking to persuade lenders that the Debtors could pay the Dividends and afford the Senior Credit Facilities, the PE Parties told potential lenders an overly optimistic story about the Debtors' financial prospects. *See* Complaint at ¶¶ 114, 119, 121.

51.     According to the Complaint, the "highly optimistic" projections about the Debtors' prospects that were provided to potential lenders were also provided to Duff & Phelps, LLC ("Duff & Phelps"), an outside financial advisory firm retained at the direction of the PE Parties. Duff & Phelps was allegedly asked to generate a "solvency opinion" (the "Opinion") with respect to the 2007 Transaction, but the Opinion only addressed the solvency of non-Debtor, Appleseed's TopCo. and was based on projections that were not verified by Duff & Phelps. *See* Complaint at ¶¶ 129, 133, 134.

52.     The Complaint alleges that on June 8, 2007, Standard & Poor's Rating Services ("S&P") issued high risk credit ratings with respect to the Debtors and the Senior Credit

17

Facilities and that on July 23, 2008, Moody's Investors Service ("Moody's") also assigned weak credit ratings to the Debtors as a corporate group. *See* Complaint at ¶¶ 148-152.

53.     The Complaint alleges that comparing the audited balance sheet of Appleseed's Intermediate and its subsidiaries as of December 30, 2006, four months before the 2007 Transaction closed, to audited balance sheets dated after the 2007 Transaction closed, shows that after the 2007 Transaction, the Debtor's liabilities exceeded its assets by approximately $389 million as of December 27, 2008, and $428.5 million as of December 26, 2009, making the Debtors insolvent. The Complaint further alleges that the Debtor was also insolvent on an "enterprise valuation" basis. *See* Complaint at ¶¶ 155-158, 161.

54.     The Complaint alleges that as the economy worsened, the Debtors' revenues and adjusted EBITDA performance also declined and that due to the Senior Credit Facilities and the Dividends, the Debtors "had no margin of error" and were unable to satisfy the maximum "Consolidated Senior Leverage Ratio" covenant under the ABL Credit Agreement and the First Lien Credit Agreement, leading to defaults and cross-defaults under the ABL Credit Agreement, the First Lien Credit Agreement and the Second Lien Purchase Agreement. The Debtors entered into a series of forbearance agreements with the Secured Lenders in the third quarter of 2010 and sought unsuccessfully to sell their assets. *See* Complaint at ¶¶ 167-171.

55.     On January 19, 2011, the Debtors filed for Chapter 11 protection. *See* Complaint ¶ 39.

56.     On January 20, 2011, one day after the Petition Date, the Debtors filed their Disclosure Statement and Plan with the bankruptcy court. See Bankruptcy Docket No. 18. The Plan contained extensive releases by the Debtors of Attenborough, Koskinen, ACAS, UBS and various other insiders and other persons defined in the Plan as the "Released Parties", who

18

designed, planned and carried out the 2007 Transaction, including the Dividend Recap, that the Complaint alleges caused the Debtors demise. *See* Plan at Art. I at ¶ 161, Art. VIII at ¶¶ D, E.

57.     There are no allegations anywhere in the Complaint that the FBK Defendants participated in any way in the design, planning or execution of the 2007 Transaction, including the Dividend Recap, or that they held any positions of influence with the Debtors in connection with those matters.  FBK Defendants incorporate by reference, their answer and affirmative defenses [docket no. 50].

### COUNT I

#### Indemnification
#### (Against All Cross Claim Defendants and Third Party Defendants)

58.     The FBK Defendants incorporate the above paragraphs by reference.

59.     The FBK Defendants were shareholders of Orchard Brands with respect to the Dividend Recap, pursuant to which they received amounts the Plaintiff seeks to recover from them in this action.

60.     Although the FBK Defendants received the payments from Orchard Brands as described in the Complaint (the so-called "Dividend"), they did not have any involvement with the design, planning or execution of the 2007 Transaction, including the Dividend Recap, nor did they have any involvement with the approval, procurement or distribution of the Dividend.

61.     The FBK Defendants also were not fiduciaries of the companies that paid the Dividend or that engaged in most of the other matters alleged in the Complaint.

62.     The Cross Claim Defendants and Third Party Defendants were directly involved with the design, planning and execution of the 2007 Transaction, including the Dividend Recap, and with the procurement, approval and/or distribution of the Dividend and the other matters alleged in the Complaint.

136419.00601/22134610v.1

63.     If it is found that Plaintiff sustained any of the damages alleged in the Complaint,

such damages were caused by the acts, omissions, breaches of duty and/or other conduct of the

Cross Claim Defendants and the Third Party Defendants, who are solely liable to the Plaintiff,

or in the alternative are jointly and/or severally liable to the FBK Defendants by way of

contractual or common law indemnity, for any amount which the Plaintiff may recover against

the FBK Defendants and for costs, legal fees, expenses incurred by the FBK Defendants, plus

interest.

### COUNT II

### Contribution
### (Against All Cross Claim Defendants and Third Party Defendants)

64.     The FBK Defendants incorporate the above paragraphs by reference.

65.     The FBK Defendants were named as defendants in the Complaint, which seeks

recovery against all named defendants jointly and severally.

66.     The FBK Defendants were shareholders of Orchard Brands with respect to the

Dividend Recap, pursuant to which they received amounts the Plaintiff seeks to recover from

them in this action.

67.     Although the FBK Defendants received payments from Orchard Brands as

described in the Complaint (the so-called "Dividend"), they did not have any involvement with

the design, planning, or execution of the 2007 Transaction, including the Dividend Recap, nor

did they have any involvement with the approval, procurement or distribution of the Dividend.

68.     The FBK Defendants also were not fiduciaries of the companies that paid the

Dividend or that engaged in most of the other matters alleged in the Complaint.

69.     The Cross Claim Defendants and Third Party Defendants were directly involved

with the design, planning and execution of the 2007 Transaction, including the Dividend Recap,

20

and with the procurement, approval and/or distribution of the Dividend and the other matters alleged in the Complaint.

70.      If it is found that Plaintiff sustained any of the damages alleged in the Complaint, such damages were caused by the acts, omissions, breaches of duty and/or other conduct of the Cross Claim Defendants and Third Party Defendants, who are solely liable to the Plaintiffs, or in the alternative are jointly and/or severally liable to the FBK Defendants by way of contribution for any amount which the Plaintiff may recover against the FBK Defendants and for costs, legal fees, expenses incurred by the FBK Defendants, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, the FBK Defendants request that the Court:

a)      enter judgment in their favor for indemnification from the Cross Claim Defendants and Third Party Defendants to the extent the FBK Defendants are found liable to the Plaintiff;

b)      enter judgment in their favor for contribution from the Cross Claim Defendants and Third Party Defendants to the extent the FBK Defendants are found liable to the Trustee; and

136419.00601/22134610v.1

c)      grant the FBK Defendants such other and further relief as may be just and proper.


Dated: June 13, 2012

BLANK ROME LLP

By: _____
Elizabeth A. Sloan (DE # 5045)
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel:  (302) 425-6400
Fax: (302) 425-6464
E-mail:  sloan@blankrome.com

-and-

Ian M. Comisky
Earl M. Forte
BLANK ROME LLP
130 N. 18th Street
One Logan Square
Philadelphia, PA 19103
Tel.: (215) 569-5618
Fax: (215) 832-5618
Email:  forte@blankrome.com

*Attorneys for Defendants, Jeffrey D. Farmer*
*Bradford J. Farmer, Brent Bostwick and*
*Vito Kowalchuk*